UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                        )
UNITED STATES OF AMERICA,           )
                                                        )
                                                        )          Criminal No. 18-CR-10399 - DPW
v.                                                      )
                                                        )
BRIAN R. WALSHE,                          )
                    Defendant                   )
_____)

**<u>DEFENDANT BRIAN WALSHE'S SENTENCING MEMORANDUM</u>**

*"True redemption is … when guilt leads to good"*
**Khaled Hosseini**

  Brian Walshe has turned his guilt for his criminal acts undertaken years ago to good for his community, his family and himself.  He has transformed himself from someone who gave no thought of how his actions affected others to someone who not only cares deeply about others, but also gives of his time and talent to help those in need by doing good deeds large and small. He has done this with the impediment of having a mental illness since the age of 7 as a result of his being born into a dysfunctional family situation.  As his psychiatrist writes, his journey has not always been linear (few journeys to overcome mental illnesses are) but took a sharp turn for the better after having participated in a self-reflection, self-improvement program through Boston Breakthrough Academy in 2020.  Since that time, Brian Walshe has devoted himself to his family, including his mother with whom he had a difficult relationship in his youth, and his three young children, and to others by raising much needed funds for worthy charities providing food and shelter to people hard hit by the Covid epidemic.  He has recently formed a business with two others he met through the Boston Breakthrough Academy, which is on the brink of success, and which will provide him with gainful employment in the future.  He has accepted

responsibility for his crimes by pleading guilty and doing everything he can to earn money to make restitution to the victims of his actions.  As Gem Mutlu writes, "[Brian] has been a leader to us, an inspiration to all he comes in contact with, and the epitome of the world transformation."  Letter of Gem Mutlu, attached as Exhibit B.  In short, Brian Walshe's guilt has led to much good.

Given the good Brian Walshe has done and is capable of doing and intends to do in the future, defendant respectfully submits that a non-guidelines sentence of time served with two years of supervised release with a condition of one year of home confinement is sufficient, but no greater than necessary, to effectuate the sentencing goals of 18 U.S.C. §3553(a).

I.      Brian Walshe's Background

Although he was born into a family with economic means, Brian Walshe's childhood can hardly be considered to be privileged.  At once being used as a pawn by his parents in their acrimonious marital relationship (he was severely attacked when he was six years old by Doberman dogs brought home by his father to spite his mother) and being put on a pedestal as the replacement for a deceased uncle, Brian was emotionally abused from an early age.  To make matters worse, his mother lived (and still lives) a reclusive lifestyle while his father (now deceased) spent his time partying with mere acquaintances just looking to have a good time.  Brian had no one else inside or outside the family to turn to for help.  According to his treating psychiatrist, this left Brian, "neglected, unloved, and emotionally damaged."  (Letter of Dr. Tittmann, filed under seal, at p. 3.)

Brian was sent to boarding school in Rhode Island for high school.  Although smart, he was unfocused and failed to excel either academically or athletically, leaving him somewhat of a misfit and even more isolated.  Neither parent was there for him physically or emotionally.  After

high school, he enrolled at Carnegie Mellon University in Pittsburg, Pennsylvania, where he met Victim 2.  Victim 2 introduced Brian to what appeared to be the glamourous world of fine art and art dealers.  In fact, at that time, Brian helped Victim 2 acquire the Shadows Paintings in the first place, fronting him some of the money for the purchase.  Brian believed that Victim 2 was his friend and that they would go into business together.

Brian's mental health continued to deteriorate and as a sophomore in college, he left college and checked himself into the Austin Riggs Center, a psychiatric in-patient treatment facility which specializes in psychiatric patients who have failed at least one prior treatment.  His depression, anxiety and anger left him unable to function.  There he started his long battle to overcome his mental illness.  His treating psychiatrist reports that "over the course of his treatment at Austin Riggs, Mr. Walshe made slow but significant progress."  (Id. at p. 5).  His stay was cut short, however, when his parents each thought the other should pay for his treatment and neither one of them would.  Although he took additional college courses, he was unable to focus and never attained a college degree.  As Brian's wife writes, "the trauma of his childhood, "has been ever-present in Brian's life, brought deep sadness for years and was the determining factor of how he showed up for himself and others in the past."  (Letter of Ana Walshe, attached as Exhibit M).

Brian continued to seek out-patient treatment after he left Austin Riggs.  He has continued to see Dr. Tittmann over the past fifteen years with varying degrees of frequency, paying for the treatment with his own funds.  Although Brian has suffered setbacks at times, he has improved greatly and "his desire to work on and improve himself has remained constant."  (Id. at p. 7).

II.     The Good

A true turning point for Brian occurred after he was arrested in this case when he had to confront what he had done.  Wanting to ensure that he did not engage in behavior so harmful to others and so self-destructive in nature again, in January of 2020 he enrolled in the Boston Breakthrough Academy leadership program.  There he met others who, like him, had engaged in destructive behaviors and who had learned to overcome them through self-reflection and good works.  Brian committed to the program totally and spent hours with others working to transform himself.  As one of his coaches in the program comments, "He was, and is, an outstanding leader, standing as an example, role model and mentor to his classmates.  His willingness to support his classmates no matter what was truly inspirational." (Letter of Brian Kelly, attached as Exhibit C).  It was there that he learned to accept responsibility for his actions and to atone for them through positive actions.

It was through the program at the BBA that Brian learned the value of doing for others in ways large and small.  Brian became the caring father to his three sons that he never experienced with his own.  As his wife is the primary wage earner in the family, Brian is the primary caregiver to his three young sons.  As Jessica Roy writes, "In recent years, it has been a pleasure to watch Brian with his 3 boys.  He has such a gentle, natural way with them, and I can only hope to be as good of a parent someday."  (Letter of Jessica Roy, attached as Exhibit D).  Brian is also a considerate brother-in-law and loving uncle.  (See Letter of Aleksandra Dimitrijevic, attached as Exhibit E).

Brian forgave his mother for her shortcomings and became her lifeline.  Although Brian changed, his mother did not.  She remains a recluse and is totally dependent on her son for her emotional and physical needs.  As she writes, "My son is the only reason I get up in the morning.

4

He is the ONLY person to take care of me and is always there for me." (Letter of Diana Walshe, attached as Exhibit A).  He brings his children to see her, ensuring that she has "some joy by seeing my grandchildren."  He takes her to all of her doctors' appointments, helps her recover from her surgeries, brings her food to eat and makes sure she has whatever else she needs so she doesn't have to leave the house (which she rarely does and hates to do) or do without.  It is unlikely that Diana Walshe will attend her much needed medical appointments if Brian is not there to go with her.

Brian similarly helps take care of his mother-in-law during the six months of the year she is in the United States.  When she is here, she lives with Brian and his family.  As his mother-in-law writes, "I suffer from diabetes.  I know having me at the house is a great deal of work for Brian.  He cooks all of my meals, includes me in playtime with my grandchildren and makes sure that I have all of my medicines." (Letter of Milanka Ljubicic, attached as Exhibit L).

Brian became the kind of friend that a friend would like to have.  From lending furniture to a college student (See Letter of Nikhil Bali, attached as Exhibit F) who didn't have a couch to sit on to listening to a friend in need for hours and just being supportive (See Letter of Evan Turell, attached as Exhibit G), Brian has put others' needs over his own.  As one of his friends writes, Brian has been that leader to me, his friends, family and so many other people.  I wholeheartedly respect and look up to the man as a role model." (Letter of Nikhil Bali, attached as Exhibit F).

On a more global level, at the Boston Breakthrough Academy Brian has learned the value of community service, giving of both his brain and his brawn.  He has delved into raising funds for such charities as Lovin Spoonfuls (where he not only raised money for but also gave of his time to serve the food), Habitat for Humanity and Yes We Care, which provides services to

youths who need support, Ocean Conservancy and Operation Underground Railroad, a refugee support organization.  (Letter of Candace Sjorgren, attached as Exhibit H).  All told, he has raised more than $500,000 for worthy charities in the past two years.  He is currently working on securing a million-dollar matching grant from a large Boston based financial firm for local charities.

In addition to giving of his time and talent to raise funds for charities serving the most needy, Brian Walshe worked for these charities in other ways as well.  As Evan Turell writes, "Brian not walks the walk but talks the talk as while fundraising, he also collected food and delivered items to families in need, many he did not know."  (Letter of Evan Turell, attached as Exhibit G).  He volunteered many hours and served as a coach to teens with social and emotional difficulties at The Torch Foundation.  (Letter of Dianne Langford, attached as Exhibit I).  In this way, he tries to help teens avoid going through what he did as a teen so they don't end up in an institution like he did.

Brian Walshe continues his charitable work to this day and has led others to join him to do the same.  He has every intention of continuing his charitable work in the future and involving his children as well.  As Nikhil Bali writes, "the Brian I know today works tirelessly every moment, dedicating his life to the service of others and making up for any misgivings of the past."  Brian truly has let his guilt led to good.

III.       The Guilt

Brian Walshe has plead guilty to selling fake paintings as if they were originals to a gallery in California in 2011 and an individual in France in 2015.  At the time, he only thought of himself and his psychological need to impress his parents with his success in the art world, as measured by his financial success, and to retaliate against his friend who had not returned money

owed to him.  His crime was a classic fraud for money offense involving sophisticated victims.

Mr. Walshe has accepted responsibility for his actions and is committed to making restitution to

his victims.

In his plea agreement, Brian Walshe agreed that his Guidelines calculation under the

fraud guidelines total 19, with an advisory sentencing guideline range of 30-37 months.  Courts,

however, have consistently found that the fraud guidelines overstate the seriousness of the crime

for garden variety fraud cases for Category I defendants like Brian Walshe.  According to the

U.S. Sentencing Commission's Sourcebooks of Federal Sentencing Statistics for the years 2015-

2019, more than 50% of sentences for fraud offenses were below the Guideline range.  The mean

sentences imposed on fraud offenders nationwide in 2018 and 2019 were more than 50% below

the low end of the Guidelines range.  According to the U.S. Sentencing Commission's Statistical

Information Packet for Fiscal Year 2020 for the First Circuit, the mean sentence for

fraud/theft/embezzlement cases was 15 months, with the median being 10 months.  Although Mr.

Walshe recognizes the seriousness of his crimes and does not minimize their effect on others, he

respectfully submits that the Sentencing Guidelines range for the offense is unduly harsh.

IV.   The Punishment

Brian Walshe was arrested at his home unsuspectedly and held in custody for three days

before being released on conditions on May 11, 2018.  He has been on pretrial release with a

curfew and daily reporting for over three years.  He has been 100% compliant with his

conditions the entire time even when those conditions prevented him from being present for

important family events such as his father-in-law's funeral.  He has used this time to transform

himself into a tireless caregiver to his family and a champion of charitable causes.

Mr. Walshe entered into a plea agreement in which he agreed to make restitution to his victims of $475,000 and agreed to a forfeiture money judgment in the amount of $225,000.[1] These monetary penalties will require Mr. Walshe to work for many years before he will be able to keep any of the money he earns, which not only punishes Mr. Walshe but also his family as his wife will have to keep earning sufficient money to support his family.  Without Brian available to care for the children while his wife works, this will be increasingly difficult.

Under the defendant's proposed sentence, he will be further punished and his liberty restricted by being placed in home confinement for a year, being able to leave his home only for work or to tend to his mother's medical needs.

At the end of the proposed sentenced, Mr. Walshe will have had his liberty restricted for over five years and will have paid over a half of a million dollars in forfeiture and restitution. This punishment is significant and will deter not only Mr. Walshe (which isn't needed as he is unlikely to offend again given his transformation) and others from committing similar crimes.

V.    The Need for Restitution

In his plea agreement, Brian Walshe agreed to an order of restitution of $50,000 to Victim 1, $145,000 to Victim 3 and the value of the three paintings taken from Victim 2.  Since pleading guilty, Mr. Walshe has taken steps to raise as much of this money as possible.  He has sold all of his personal collections which had any value, including his comic book collection, his whiskey collection, and the pen collection which he received from his beloved grandfather.  All told, Brian Walshe raised $15,000 through the sale of these items.

As stated in the PSR, Brian Walshe has recently started a business with another individual who he met through the BBA.  The business, called Lets We Can, provides interactive

---

[1] The Government agreed that early restitution payments would also be credited to the forfeiture.

team building exercises to businesses whose employees work remotely or in non-traditional

office setting.  Brain Walshe drew a salary of $2,500 a month for two months and, once some

money started to come into the business, $5,000 for the past two months.  Brian believes that his

salary will increase in the coming months if he is able to continue to work for the company as

new contracts come in.  Brian has put 100% of this money into an account set aside for

restitution.

In addition to selling everything he has that is of any value other than his wedding ring,

Brian asked his mother if he could use the $75,000 she posted as bail towards restitution.  Diana

Walshe agreed to this request.  Brian Walshe intends to repay his mother this money after he

finishes paying his restitution and forfeiture obligations.

In total, since his guilty plea, Brian Walshe has raised over $110,000 to be paid towards

his restitution obligation and believes that he will have a total of $125,000 to pay in restitution by

the time of his sentencing.

Brian's best chance of earning enough money to pay his financial obligations is through

the success of his business.  If he is not able to work for any length of time in the future,

company's chances of success diminish, as does the prospect that Mr. Walshe will be able to

make his restitution obligations.  Without a college degree and no relevant work experience, he

is unlikely to be hired by a company for any significant position at any significant salary.

Brian's presence is necessary for his current business to have a chance of success.  As one of two

owners, he has spent countless hours contacting potential customers, putting together power

point presentations to market the company and its products, writing proposals, and overseeing

the delivery of its products.  The company recently signed its largest contract to date, one which

is expected to bring in between $50,000 and $100,000 in revenue to the company.  Brian intends to put 100% of his profits from this contract to his restitution obligation.

ARGUMENT

As this Court is aware, since the Supreme Court decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), sentencing options available to district courts have significantly broadened. *See*, *e.g.*, *United States v. Taylor*, 532 F.3d 68, 69 (1st Cir. 2008) ("[O]nce the [guideline sentencing range ("GSR")] is properly calculated, 'sentencing becomes a judgment call' for the court, and the court may construct a sentence varying from the GSR 'based on a complex of factors whose interplay and precise weight cannot even be precisely described.'"); *United States v. Innarelli*, 524 F.3d 286, 292 (1st Cir. 2008) (quoting *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008)). Where there exist "sound, case-specific reasons" to do so, a sentencing court is authorized to deviate from the guidelines. *Martin*, 520 F.3d at 91. The post-*Gall* sentencing inquiry is "broad, open-ended, and significantly discretionary." *Id.* at 92.

Consideration of the unique aspects of this case against the sentencing factors set forth in 18 U.S.C. §3553(a) leads to the conclusion that the sentence of time served, with a period of supervised release of two years, the first of which is to be served in home confinement, is appropriate and just.

I.    The Nature and Circumstances of the Offense

The offense is a routine fraud case involving sophisticated rather than vulnerable victims completed over six years ago.  As the statistics set forth above indicate, courts in this District and nationwide routinely vary from the Sentencing Guidelines range in this type of case.  As Dr. Tittmann attests, Mr. Walshe's underlying mental illness most likely contributed to his offense.

10

II.    The Characteristics of the Defendant

As set forth above, Brian Walshe is a person who has learned to control his mental illness through therapy, who deeply regrets his past actions and who has transformed himself into a thoughtful caring individual who gives to others.  He has not only reformed and redeemed himself to an exceptional degree these past few years. He also has contributed greatly to society by raising substantial amounts of money for and working on behalf of numerous worthy charities.  Courts have recognized that extraordinary redemption and extraordinary good works, to the degree that our present here, are valid mitigating circumstances which can call for a lower than guidelines sentence.

Mr. Walshe's role as the only available caregiver for his mother who suffers from chronic life-threatening conditions, which require ongoing medical appointments, is another compelling circumstances to warrant a lower than guidelines sentence.  U.S.S.G. §1B1.13 n.1(c)(ii).  Indeed, Judge Young released an inmate under the First Step Act where, as here, the defendant was the only potential caregiver for his ailing mother.  *United States v. Bucci*, 409 F.Supp.3d 1 (D. Mass 2019).  Diana Walshe has no other family members in the area and has a strong distrust of strangers.  As she writes, "I do not have any friends.  I do not socialize with anyone.  My son and his boys have been the only ones to visit with me for the past four and a half years."  (Exhibit A). Diana Walshe will likely not get needed medical treatment if her son is incarcerated.

III.    The Need for the Sentence to Promote Respect for the Law

The proposed sentence, which included three days of incarceration after Mr. Walshe's arrest for which he had no time to prepare, reflects the seriousness of the offense.  That coupled with the significant financial penalties and period of home confinement provides just punishment for the offense and adequately deters criminal conduct by Mr. Walshe and others.

IV.     The Need to Provide Restitution

Mr. Walshe's best opportunity to be able to make restitution in this case lies in his ability to continue to work for his current company and for the company to succeed.  Brian is pivotal to the company's success.  As his business partner writes, "During the time I've know Brian, we've spent countless hours together.  He is an invaluable part of my ecosystem as a friend, partner, mentor and confidant."  (Letter of Zachary Broomfield, attached as Exhibit J).  As a start-up, very little money has been available for salaries.  That is beginning to change with the landing of its first major contract.  Successful completion of that contract will provide the company with experience and recommendations that the company can use to market its product to others.  If Mr. Walshe is incarcerated, the company will have difficulty existing and will need to find a partner to replace Mr. Walshe.  Mr. Walshe has set aside very dollar he has made from the company for restitution and is committed to continuing to do so until his restitution obligation is met.  The need for restitution is another factor supporting a lower than guidelines sentence in this case.

CONCLUSION

"Imposing a sentence on a fellow human being is a formidable responsibility," compelling "a court to consider, with great care and sensitivity, a large complex of facts and factors." *United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012).  The sentence that should be imposed ultimately involves a complicated analysis of the individual involved: what punishment has already been inflicted, is he likely to engage in recidivist behavior, has he been rehabilitated or is he particularly receptive to rehabilitation, and whether incarceration will significantly further the goals of sentencing.  It is a complex matrix of factors, ultimately

12

dependent upon the individual human being at issue, which is precisely why our criminal justice system has vested this Court with discretion to differentiate and individualize sentencing.

For all of the foregoing reasons, Brian Walshe respectfully submits that a sentence of time served, coupled with a period of home confinement during his period of supervised release, constitutes a fair and just sentence in this case, i.e., one that is "sufficient, but not more than necessary," to meet the sentencing goals enumerated in § 3553(a).

Brian Walshe asks that the Court consider his own letter, which is attached to the body of this Memorandum and incorporated herein.

Dated: September 10, 2021                 Respectfully submitted,

                                          BRIAN R. WALSHE

                                          By his attorneys,


                                          /s/ Tracy A. Miner
                                          Tracy A. Miner (BBO No. 547137)
                                          Miner Siddall LLP
                                          101 Federal Street, Suite 650
                                          Boston, MA 02110
                                          Tel.: (617) 202-5890
                                          tminer@msdefenders.com

                                          Samuel Goldberg (BBO No. 549248)
                                          Law Offices of Samuel Goldberg
                                          120 Washington Street, Office 100A
                                          Salem, MA  01970

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF on counsel for the government on September 10, 2021.

/s/ Tracy A. Miner
Tracy A. Miner

09/06/2021

The Honorable Judge Douglas P. Woodlock
Senior Judge of the United States District Court for the District of Massachusetts
1 Courthouse Way
Boston, MA 02210

Dear Judge Woodlock,

I am writing to you as I fear that I will not be able to speak articulately at my sentencing. I am extremely sorry for my past conduct. My sorrow is multifaceted. My conduct has led to others being hurt as well as to the misuse of our government's resources that could have been focused to feed the hunger or shelter the homeless. My conduct has caused and created a world that lacks deep trust and psychological safety. I didn't understand the total damage to our community that my lack of integrity had caused. I will never be blind to this again.

For the past two years I have been in a training process that supports all members of our community to be the best version of themselves. This training has changed my life. I have opened a new company where we train others on the foundations of trust, safety, inclusion, diversity and collaboration.

I have created a contract for myself:"I am an honest, courageous, loving leader." I repeat this contract to myself on a daily basis. I train everyday on 100% integrity, 100% of the time. Dr. Tittman asked me:"How can I tell the judge, that I, as a medical professional, am sure that you will never break the law again?" My answer was the following: Since January of 2020 I train daily on several distinctions of leadership. One of them is integrity. Crime occurs from an incremental breakdown of one's integrity. This can occur when one becomes attached to outcomes over process. For the first time in my life I have a team, small group and one-on-one mentoring that supports 100% integrity I now exemplify myself. Because of that support and training I am unwavering in always being my word and responsible for all actions direct and indirect. I mentor others, using my own experiences to enroll them into never wavering from being in integrity. Whether it be speeding, omitting something from their taxes or being late to a meeting, I believe that how we do one thing is how we do everything. My point is not to be strict, but to be loving. To hold others at their highest potential. To let them know that one indiscretion that is not acknowledged will only lead to others. It is as simple as breaking your word to yourself. The sooner one reaches out for support, the less likely they will need the support of our justice system for correction and redirection.

My request is your support in continuing to be in service to my wife and sons, my mother, my mother-in-law, my business partners, our community and charities in our state. I am requesting the opportunity to repay my debt to our community without breaking my word to those that depend on me daily. I am not a threat to any members of our society. My only declaration and intention is to be of service to our community and beyond. I am embarrassed that it took me this long to transform, but I am committed to continuing my purpose of being in contribution, leading by example and serving everyone I come in contact with.

Thank you.

Sincerely,

Brian R. Walshe