UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> BRIAN R. WALSHE, ) <br> Defendant ) <br> ) | Criminal No. 18-CR-10399 - DPW |

## SUPPLEMENTAL MEMORANDUM OF BRIAN WALSHE IN AID OF SENTENCING

On October 8th of last year, the Court was about to impose a sentence of home confinement on Brian Walshe in connection with his guilty plea to charges of wire fraud, interstate transportation for a scheme to defraud and an unlawful monetary transaction when the Hingham Savings Bank raised an issue about a Treasury Check it issued to the Clerk on behalf of Mr. Walshe to put towards his restitution obligation. The Court suspended the sentencing, changed Mr. Walshe's conditions of pretrial release to include home confinement and requested the US Attorney's Office to investigate that issue. The Bank has subsequently confirmed that there were sufficient funds in Mr. Walshe's account to cover the check (which it should have confirmed when it issued the check) and that Mr. Walshe did nothing inappropriate in obtaining the check. Mr. Walshe's continued sentencing hearing is now set for June 9th. Mr. Walshe submits this Memorandum to update the Court on events that have occurred and to address issues that have arisen in the past eight months.

### The Revised PSR

After the last sentencing hearing, the US Attorney's Office investigated not only whether there were sufficient funds in Mr. Walshe's account at the Hingham Savings Bank to cover the check (which there were), but also virtually every financial transaction Mr. Walshe and his wife have engaged in during the past five years, as well as transfers made by Mr. Walshe's mother to either her son or his wife (and apparently to his attorneys). On December 20, 2021, the US Attorney's Office submitted a Memorandum to Probation setting forth a series of alleged misstatements and omissions contained in Mr. Walshe's Financial Statements to Probation that he filed on May 16, 2021. Based on those allegations, the Probation Department determined that Mr. Walshe should receive a 2 point enhancement on his Guidelines Calculations for Obstruction of Justice.

On February 14th, Defendant submitted a detailed objection to the revised PSR, addressing the alleged misstatements and omissions in detail. In response, the Probation Department issued a Third Addendum to the PSR. In that Addendum, the Probation Department acknowledged that Mr. Walshe did disclose a number of transactions in his financial statement, but claims that he should have disclosed a transfer of $91,000 to his wife in May of 2018 and concluded that the 2 point enhancement should still apply.

Mr. Walshe acknowledges that he transferred $95,000 ($91,000 by check and $4,000 by cash) to his wife in May of 2018, shortly after his arrest, and for the sake of completeness, should have explained the nature of the transfers and the genesis of the funds to Probation to

avoid confusion. Mr. Walshe did not intend to conceal the transaction and did not consider it to be material to his financial condition as the funds transferred were not his, but rather belonged to his mother. On May 24, 2018, shortly Brian was arrested in this case, Diana Walshe gave Brian $125,000 and directed him to first use it to pay outstanding bills and then to give whatever was left to his wife Ana so that she would have funds available as needed to take care of the children. Diana Walshe was trying to provide for her grandchildren and to keep her son's family intact at a particularly stressful time in his son's marriage. As Diana Walshe explains, "I wanted my son's wife to feel supported so I gave my son money to pay bills and keep his wife happy." (Letter of Diana Walshe, attached as Exhibit A.) Brian followed his mother's direction as where to direct the funds, which he always considered to be hers to direct. He paid off his credit cards and some smaller bills and gave the remainder to his wife. (Copies of the $125,000 bank check from Diana Walshe and Brian Walshe's bank statement showing the distribution of the funds are attached as Exhibit B.) Mr. Walshe did not disclose the transaction to Probation because the money was not his, but rather belonged to his mother.

Brian Walshe did disclose to Probation on his financial statement the one large transfer of his own funds to his wife. In 2019, after his father's death, Mr. Walshe received approximately $40,000 as the beneficiary to a life insurance policy owned by his father. (Having now located the records, the amount he actually received was $38,750.) That money truly belonged to Brian. Shortly after receiving the funds, he transferred them to his wife to help pay the family bills, which he disclosed in his financial statement. He distinguished these funds, which were his own, from the prior funds, which belonged to his mother.

Nothing in the financial statements required Mr. Walshe to disclose a gift from his mother to his wife. He did disclose that his mother helped support him and his family. As Mr. Walshe did not intentionally omit a financial transaction that he knew to be required to be disclosed, the 2 point enhancement for obstruction of justice should not apply.

Mr. Walshe Provided Accurate Information to the US Attorney's Office

Mr. Walshe provided accurate information to the Government about where and when he sold The Shadow paintings. This information allowed the Government to track the paintings to where they are today, to determine whether there was any collusion involved (there wasn't) and to make a decision with respect to forfeiture of the paintings.

Mr.Walshe's Continued Support of His Family and Community

Mr. Walshe has continued to provide support to his family and his community during his period of home confinement. With respect to his family, he is the primary caretaker for his three sons, who have continued to flourish under his care, as well as his mother and mother-in law. (Letter of Ana Walshe, attached as Exhibit C) In December of last year, his mother-in-law suffered from a brain aneurysm, which required surgery and hospitalization for over a month. This Court modified Brian's conditions of release to allow him to visit his mother-in-law in the hospital to assist in her care and recovery. When she was released from the hospital, she returned to Brian and Ana's home, where he continued to care for her as she recovered. (Letter of Aleksandra Dimitrijevic, attached as Exhibit D). Thankfully, Mrs. Ljubicic was able to almost fully recover from her condition, which she attributes in large part to Brian's care (Letter of Mrs. Ljubicis, attached as Exhibit E).

In March of this year, Brian's wife, Ana, accepted a position with the real estate firm of Tishman Speyer. This position, which came with a large increase in salary and with excellent health care benefits for her family, requires her to work in Washington, DC for much of her time. She therefore sold her Cohasset home and purchased a home in DC with the proceeds from the sale and a bank mortgage. Because of his current legal situation and his mother's medical condition, Brian was unable to move with her. With permission of Probation, Brian and his three sons moved to a house rented by his mother in Cohasset, where he now is the sole caretaker of his sons during the week. He also takes care of his mother, who lives with them when his wife is not in town. Unfortunately, because of her medical conditions, she is not able to help much with the care of the three boys. Brian continues to take his mother to all of her medical appointments.

Brian has continued to work on his mental health issues with Dr. Tittman and by working with Boston Breakthrough Academy through self-reflection and community service. (Letter of Dr. Tittman, attached as Exhibit F.) During the past eight months, he has led teams to raise over $10,000 for 9/11 first responders, $22.000 for Autism Speaks and over $50,000 for the Lakes Region Disabled Sports. He also raised money for the Mother's Day Walk for Peace, where, with the permission of Probation, he and his family also walked.

Brian has also continued to work with his partners in his businesses, Capital Letters, which has been renamed Level 4 Coaching, and Let's We Can, in trying to get those businesses off of the ground. He continues to believe that these businesses can be successful and will enable him to earn a living and meet his restitution obligations.

Conclusion

For the past eight months, Mr. Walshe has under home confinement as a result of a false alarm by Hingham Savings Bank with respect to a Treasury Check he obtained to make restitution. He has continued to take care of his family and serve his community during this time. No additional charges have been brought by the US Attorney's Office and Probation has not moved to revoke his bail. If an error were made on his Probation filings as a result of being the conduit for funds from his mother, he has more than paid for that mistake by being confined to his home for eight months. Therefore, Mr. Walshe respectfully requests this Court to conclude his sentencing by sentencing him to the sentence that it determined to be fair and reasonable eight months ago – time served with a three year period of supervised release, the first year of which will be in home confinement.

Respectfully submitted,

BRIAN R. WALSHE

By his attorney,

*/s/ Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Miner Siddall LLP
101 Federal Street, Suite 650
Boston, MA 02110
Tel.: (617) 202-5890
tminer@msdefenders.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF on counsel for the government on.

/s/ Tracy A. Miner
Tracy A. Miner