UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


```
                              )
UNITED STATES OF AMERICA,     )
                              )          Criminal Action
          Plaintiff,          )          No. 18-10399-DPW
                              )
v.                            )
                              )
BRIAN WALSHE,                 )
                              )
          Defendant.          )
                              )
```


BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE


SENTENCING

June 9, 2022


John J. Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, Massachusetts  02210


Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

1   APPEARANCES:

2   On Behalf of the Government:
    Timothy E. Moran
3   U.S. Attorney's Office
    One Courthouse Way, Suite 9200
4   United States Courthouse
    Boston, MA 02210
5   617-748-3100
    Timothy.e.moran@usdoj.gov

6

7   On Behalf of the Defendant:
    Tracy A. Miner
8   Miner Siddall LLP
    101 Federal Street
9   Suite 650
    Boston, MA 02110
10  617-202-5890
    Tminer@msdefenders.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                       P R O C E E D I N G S

            (The following proceedings were held in open court
before the Honorable Douglas P. Woodlock, United States
District Judge, United States District Court, District of
Massachusetts, at the John J. Moakley United States Courthouse,
One Courthouse Way, Courtroom 1, Boston, Massachusetts, on
June 9, 2022.)
(Case called to order.)

            THE COURT:  Well, I'm not sure that we can -- in fact,
I'm certain that we can't conclude today.  There are a number
of open questions here, and I think I want to identify them.  I
to have to say that the question with respect to the will in
Norfolk is quite fundamental to me.

            And so I guess the first question is, what's going on
there?  Has it just been filed and nobody's pressing the issue?

            MR. MORAN:  I can take the first shot at that
question, Your Honor.  Present in the courtroom is Attorney
Janet Wallace.  She represents -- and she'll, I hope, correct
me if I'm wrong.  I should add probate is not my area.  If I
have an area of expertise, it's certainly not probate.  She
represents Andrew Walshe, who has been appointed the personal
representative of the estate of Thomas Morecroft Walshe.

            THE COURT:  Right.

            MR. MORAN:  What I understand from my conversations
with Attorney Wallace and from having reviewed the record is

that Mr. Brian Walshe, the defendant before Your Honor, has a statutory obligation to --

THE COURT:  Trust me, I think I understand the background.  What's happening in the probate court?  Is it just sitting there?

MR. MORAN:  I think it's just sitting.  The home in Hull was not sold.  The stuff, the physical items and other personal possessions of Mr. Thomas Walshe have been sold, but we believe that the proceeds are with Mr. Brian Walshe and that hasn't progressed any further.

So they have affected service and he just hasn't responded, so my understanding is it sits.  I think the next step could be for the personal representative to press a criminal suit in Norfolk County.  But to be honest, Your Honor, I don't know if there would be much prospect of getting --

THE COURT:  Oh, I think there's another way of dealing with it.

MR. MORAN:  Yes, which --

THE COURT:  We're going to have a hearing on it.  This is the most serious kind of allegation, and whether the probate court for whatever reason isn't advancing it, it is fundamental here.  So, Ms. Miner.

MS. MINER:  Your Honor, if I may please just tell you about what I understand the status is, and I'm not a probate lawyer either.

1    THE COURT:  That may be so, but I think perhaps both

2    of you are going to develop some expertise in the subject

3    matter that the probate court has to deal with, and someone who

4    forges or pursues a will without the authorization to do so and

5    evades service is something that I think any lawyer can deal

6    with as a matter of a contest or a question of fact.

7    MS. MINER:  Your Honor, I will deal with whatever I

8    have to deal with.  You know me, I will be prepared.  I just

9    preface with what I can tell you now from what I know.

10   Mr. Walshe has an attorney in the probate court

11   matter.  He has had that attorney for a number of years now.  I

12   spoke to that attorney.  It's Attorney Porcelli, Anthony

13   Porcelli, who has a notice of appearance and is listed on the

14   docket in the probate court matter who was unaware of any of

15   this.

16   THE COURT:  Unaware of what?

17   MS. MINER:  Unaware of any of this.  He was not aware

18   that he was ordered to file a -- he was never served with a

19   copy of the order.  He did not know anything about anything

20   other than --

21   THE COURT:  Does he have an appearance in the case?

22   MS. MINER:  He does.

23   THE COURT:  Does he ever look at the docket?

24   MS. MINER:  I can't answer that, Your Honor.

25   THE COURT:  Okay.  Does he have a client?

1       MS. MINER:  He does.

2       THE COURT:  Who is the client?

3       MS. MINER:  The client is Brian Walshe.

4       THE COURT:  Has he talked to his client?

5       MS. MINER:  I don't believe they've talked to each

6   other until this whole issue arose.

7       THE COURT:  Well, okay.  There is one way of looking

8   at it, which is, don't ask, don't tell.

9       MS. MINER:  Your Honor, if I may.

10      THE COURT:  Hold on just a moment, if I may.

11      MS. MINER:  Certainly.

12      THE COURT:  This view that things can be avoided in

13  various ways, not responded to in various ways, is not the way

14  I'm going to deal with this.  I was fairly straightforward

15  about what I was going to do in this case, and principally

16  because there are victims, quite apart from those who require

17  restitution, and I want to be sure that those victims are

18  properly taken care of.  But what I have now is a set of

19  circumstances in which the victims are being used as a shield

20  from careful analysis of the sentencing issues.

21          Apparently, the mother has moved out of the

22  jurisdiction, leaving Mr. Walshe the responsibility of taking

23  care of those children.  But also it would appear she has

24  assets and receives assets in various sorts of ways.  It would

25  appear that Mr. Walshe's mother is prepared to provide funds at

various times, or not.  And the question for me is whether or not I am able properly to -- one of the questions is whether I'm able properly to fund the restitution in this case or, more accurately, the defendant is.  There is reason to believe that he is.  But it requires perhaps talking to whatever lawyers he has about whatever assets he has access to and could meaningfully have access to.

What I do know is that the response with respect to the objections to the Presentence Report are not persuasive, although I'll hear argument about that.

But I'll tell you two things that I'm planning. Number one, I want to find out what's going on in the probate court.  And since I'm told that nothing is going on in the probate court, we're going to probably have a trial over whether or not there was an improper presentation of a will and appropriation of the assets of the estate.  That's one thing that we'll probably be dealing with here, irrespective of whether or not the person who files an appearance on behalf of the defendant doesn't talk to him about what's going on.  Maybe this is the time that they get to know each other a little bit better.

The second is to get my hands on the question of what the real restitution is in this area in terms of actual dollar figures in light of the government's report, which I understand, although I'm not particularly pleased with, and

1  that is that the government isn't able to pursue further or

2  doesn't believe that it would be productive to pursue further

3  the recovery of certain of the paintings that Mr. Walshe

4  apparently provided some information with respect to.

5       So it's not available there.  So I would like to know

6  what restitution amounts we're talking about.

7       MR. MORAN:  Your Honor, with respect to question one

8  that you've just outlined, may I have a moment to confer with

9  Attorney Wallace?  Because I think part of those questions may

10  have been answered in the state court, and with an eye towards

11  perhaps narrowing the scope of what you may want --

12       THE COURT:  Yes.

13       MR. MORAN:  -- if I may have a moment to confer with

14  her.

15       THE COURT:  Yes.

16       (Counsel discussion off the record.)

17       MR. MORAN:  Thank you, Your Honor, for the moment.

18  Having your particular questions in mind was helpful in terms

19  of, I had spoken to Attorney Wallace a couple of times.

20       THE COURT:  Right.

21       MR. MORAN:  So what I've learned from her is that the

22  probate court, Judge Roberts, did admit what I'm calling the

23  cell phone will to probate.  She also removed Mr. Brian Walshe

24  as the personal representative.  Those are both findings of the

25  court.

1    THE COURT:  I don't have copies of those findings,

2 right?

3    MR. MORAN:  I don't think so.

4    THE COURT:  When was this done?

5    MR. MORAN:  My understanding is that it took place in

6 two parts.  First, she appointed Andrew Walshe as the special

7 personal representative.  That took place on July 17, 2019.

8 That appointment was also the removal of Mr. Brian Walshe as

9 the personal representative.

10    THE COURT:  Right.  I have all of that material.

11    MR. MORAN:  Correct.  So there is no specific -- the

12 probate court did not make a specific factual finding about

13 what happened.  So I think that's what Your Honor is asking

14 about.

15    THE COURT:  Of course.  I mean, what has allegedly

16 transpired is that someone who had no right to do so took

17 possession of assets of the estate for his own personal

18 benefit.  That's the allegation.

19    MR. MORAN:  The other --

20    THE COURT:  If I may.  And apparently, unless there's

21 something that someone is going to tell me in the next five

22 minutes, there has been no action in the state court with

23 respect to that.

24    MR. MORAN:  Well, that I can answer a little bit

25 better with the help of Attorney Wallace.  The rest of the

1   estate has progressed, so she has caused the sale of the Hull

2   property and another property that Mr. Thomas Walshe owned in

3   Montserrat and has disbursed those funds to the heirs.

4          THE COURT:  So the property in Hull has been sold?

5          MR. MORAN:  The real property.  What I guess would be

6   under -- what we would need to find out from Mr. Brian Walshe

7   was the personal property and the bank accounts.

8          THE COURT:  Right.

9          MR. MORAN:  So it didn't stop altogether, but there is

10   still the open question which Your Honor was raising.  I just

11   wanted to put more flesh on the bone, so to speak.

12          THE COURT:  I'm not sure that's the body of material

13   that's been put on the bones.

14          MR. MORAN:  Well, at least I have a little more

15   detail.  It does not answer Your Honor's ultimate question, but

16   I wanted to --

17          THE COURT:  We have someone who has alleged, contends

18   he doesn't have access to funds.  We have materials that

19   suggest that he does.  And they've been the subject of a

20   proceeding in the state court for some period of time as to

21   which apparently nothing more has been done on this discrete

22   issue.

23          And of course I have received affidavits from those

24   who challenged Mr. Walshe's efforts to be the personal

25   representative in that matter.  But there's some amount of

money that can be identified, I suppose, if it was in fact

accessed by him.  And that has not even been resolved.  All I

have is allegations here, allegations and pictures.

MR. MORAN:  Yeah, sworn allegations, Your Honor, but

yes.

THE COURT:  I mean, sworn allegations have a way of

just beginning, not ending, the conversation.

MR. MORAN:  His removal as the personal

representative, he was a party to that action, so he had an

opportunity to confront them in that --

THE COURT:  He may.  He's not the personal

representative, okay, fine.  But what did he do, what did he

take, that kind of thing, that hasn't been resolved, for

whatever reason hasn't been resolved, unless, as I said,

there's something missing here.

So right now I'm going figure it out, and I think it's

going to be a trial over the question of whether or not there

was wrongful appropriation of the estate, assets of the estate.

MR. MORAN:  Your Honor, with respect to the second

question Your Honor raised regarding the correct amount of

restitution, it's obviously not binding on Your Honor, but we

did --

THE COURT:  Let's recite it again because the victims

have, at least in the case of Victim Number 2, there was some

question about recovery of those paintings.  I am assuming that

1    those paintings cannot -- I'm saying "paintings" broadly --

2    those paintings can't be recovered.  So what is the restitution

3    amount that we would be dealing with?  We did settle on Victim

4    1, but let's recite it again.  Victim 1 would be how much?

5            MR. MORAN:  $50,000.

6            THE COURT:  All right.

7            MR. MORAN:  Victim 2 should be $280,000.  That's 240

8    for the two Shadows, which was the price that Victim 1 paid for

9    them, and 40,000 for the Dollar Sign, which was the last --

10   which was at the time the last third-party sale.

11           THE COURT:  Right.

12           MR. MORAN:  And then Victim 3, the gentleman in

13   France, was $145,000.  That was based on the sale.

14           THE COURT:  Right.

15           MR. MORAN:  So I think, subject to Your Honor's

16   approval, of course, I think the parties are, on the basis of

17   the plea agreement, in agreement those are the amounts that

18   should be used for --

19           THE COURT:  Okay.  Well, I haven't explored valuation

20   in detail, but that appears to be what we're talking about

21   here, what the parties were talking about, if it's monetized.

22           Now, the defendant seems to suggest he doesn't have

23   access to that kind of money.  Maybe that's true.  But maybe

24   it's not, and maybe what the defendant is doing is engaging in

25   a process of manipulation that suggests that he's acknowledging

1    his responsibility but sorry he can't pay for it.  But we have

2    that figure.

3         Then we have the -- I'm looking now at the

4    government's recommendation at page 8 of the government's

5    supplemental sentencing memorandum, only one portion of which,

6    by the way, is under seal.  The rest of it is not.  I have a

7    request for entries of orders of forfeiture here.  It doesn't

8    seem to me there is any reason I can't enter those orders of

9    forfeiture now, is there?

10        MR. MORAN:  No, I think that's correct, Your Honor.  I

11   think Your Honor entered the order --

12        THE COURT:  I did.

13        MR. MORAN:  -- with respect to the physical paintings.

14   Outstanding would be the order with respect to the money

15   judgment.

16        THE COURT:  Right.  And I don't know why I wouldn't.

17        MR. MORAN:  I agree, Your Honor.  I don't think

18   there's any reason not to.

19        THE COURT:  Okay.  So I'm trying to get this to a

20   liquidated figure so that those who are periodically providing

21   support or alleged to understand what it is that is the real

22   obligation, monetizeable obligation that Mr. Walshe has, put to

23   one side what else happens in the sentencing of this.

24        Any dispute that the orders of forfeiture could be

25   entered, Ms. Miner?

1    MS. MINER:  No, Your Honor.

2    THE COURT:  Okay.  So we'll do that, to the degree

3    that a preliminarily order of forfeiture hasn't already been

4    entered in any event on this.

5    So then we have a special assessment of $300, I

6    understand that.  And we have the government's recommendation

7    with respect to particular amounts.

8    Now, there's another dimension to it.  That is that

9    the defendant seems to profess that he didn't understand what

10   was called for by the financial report that was supposed to be

11   supplied.  It's a little hard for me to believe that he

12   couldn't.  He's an intelligent man, unless he willfully misread

13   it.

14   But now he does know what Probation requires.  I want

15   it restated as of the date that he filed it with this newfound

16   insight that apparently he has about what his obligations are.

17   And I want a financial statement in the same form with the same

18   understanding filed as of today or tomorrow regarding

19   everything thereafter.

20   He's been involved in a variety of different

21   activities, if I'm to believe the government's submission since

22   the filing of that original statement.  I want to understand

23   what access the defendant has to various kinds of monies here

24   within his family, within the filings that are made or

25   submissions that are made to banks and to others.

1    But I do want to talk about one thing in particular

2    which was the triggering factor that stopped the sentencing

3    hearing.  It's difficult for me to read the materials that the

4    parties have submitted clearly, but it does appear that there

5    were sufficient funds in that account.  Any dispute about that,

6    Mr. Moran?

7    MR. MORAN:  I think that's right, Your Honor.  I think

8    it was actually more of a timing issue.  I'm going to look over

9    my shoulder to Special Agent Coke who is in the courtroom to

10   correct me.

11   THE COURT:  Here is the issue I'm trying to get

12   straight, that you have a bank official with cold feet who

13   issues a treasurer's check and is a little concerned that

14   they've done it and they shouldn't have, for whatever internal

15   reasons.  But if someone were to enforce that, for instance,

16   some recipient of the treasurer's check, I'm not sure that

17   there would be any defense on the part of the bank itself.

18   MR. MORAN:  I think you're correct.  If I'm hearing

19   you correctly, the bank could not have stopped the cashier's

20   check.

21   THE COURT:  Right.  And there's two parts to that.

22   They couldn't have stopped the cashier's check, although I did

23   because the recipient of that bank check was this court, and I

24   did not want to introduce yet another dimension of potential

25   liability on the part of the defendant here or the bank itself,

1  so I stopped it.

2  But now looking at the underlying materials, and I do

3  want you to be able to talk to the agent about this.  My

4  reading of it is that there were sufficient funds in there

5  anyway.

6  MR. MORAN:  Yes, I think Your Honor is correct.

7  THE COURT:  So if, for example, the person who drew

8  the bank cashier's check had a cause of action, that would

9  presumably be Mr. Walshe, he would have been able to go to the

10  bank and say, "You were wrongfully withholding on this."

11  We'll put to one side UCC problems on this.  I just

12  want to be sure that I am not missing something when I say that

13  there was sufficient -- or say it appears that there were

14  sufficient funds in the account at the time.

15  MR. MORAN:  I think you're right, yes.  I think that's

16  correct.  One moment, Your Honor.

17  (Attorney Moran confers with Agent Coke.)

18  MR. MORAN:  Agent Coke has refined my understanding,

19  but I think, in summary, Your Honor is correct.  I don't think

20  -- as a UCC matter, I don't think the bank --

21  THE COURT:  I shouldn't have introduced that.

22  MR. MORAN:  I think because of the timing, the bank

23  was within its rights to freeze things.  But ultimately, it was

24  a matter of timing that the banks carve out a certain number of

25  days for checks to cash.  I think the bank was correct that at

1 the moment there wasn't the right amount of time but where we

2 are right now, yes.

3 　　　　THE COURT:  Well, banks like to take advantage of

4 float.

5 　　　　MR. MORAN:  Exactly.

6 　　　　THE COURT:  Whether they have the right to do that and

7 what right they have under the UCC or whether or not they're

8 continuing to engage in their own form of expropriation is

9 another matter.  But funds have been placed in the account at

10 that time, and whether or not they could be within their rights

11 to deny it is another matter.

12 　　　　MR. MORAN:  Correct.

13 　　　　THE COURT:  Okay.

14 　　　　MR. MORAN:  I think I agree with your assessment of

15 the facts.

16 　　　　THE COURT:  Okay.  So I've got that part of it clear.

17 That doesn't necessarily mean that the defendant is without

18 knowledge of various of these matters, but I want to be clear

19 about what other victims might be involved, and I don't view

20 the bank as a victim under these circumstances.

21 　　　　So then I go to the question of how to resolve the

22 objections that are made to the Presentence Report.  And my

23 view is I will do that after review of the filing of the

24 restated financial report and the updated financial report so

25 that I understand and Mr. Walshe understands fully that he has

1   to be candid with the court, that he cannot engage in this kind

2   of process of, Oh, I just didn't understand.  Now it's clear.

3           And that similarly goes for this question of the

4   responsibility for the -- any misappropriated elements of the

5   estate, whether that's been pursued further in the probate

6   court because I'm going to resolve it here, I have to here.

7           So what do we need for time?

8           MS. MINER:  If we could have eight weeks.

9           THE COURT:  Eight weeks?

10          MR. MORAN:  August is fine with me, Your Honor.  I

11  think my witnesses for that hearing would be Andrew Walshe and

12  Mr. Ornstein and perhaps Attorney Wallace.  She's in the

13  courtroom.  I'm going to ask her if she's aware of any

14  conflicts, or if she's spoken to Mr. Andrew Walshe and is aware

15  of any conflicts.  Obviously people -- when you pick a date,

16  people will have to plan accordingly, but since we're on the

17  front end, if I may make that inquiry.

18          THE COURT:  Okay.  Well, I think your inquiry should

19  be whether or not there are any other witnesses and their

20  availability for depositions because I'm going to permit

21  deposition examination if the parties want it.

22          This is something I'm going to resolve on the basis of

23  what we call a fair preponderance of the evidence, but it's

24  more likely than not.  That's the same standard I believe in

25  the state court but maybe not.  In any event, that's what I'm

going to be resolving it on because this is essentially a question of whether or not there's been misrepresentation to the court.

MR. MORAN:  I'm not sure if depositions and testimony before Your Honor is necessary.  We don't --

THE COURT:  You mean what I should do is sit through what amounts to examination that consists of "And then what happened?"

MR. MORAN:  Well, no, I would -- with their permission, I would prepare them and I would be much more efficient than that, Your Honor.

THE COURT:  And for cross-examination?

MR. MORAN:  They've already provided affidavits, so we're not operating -- I think a deposition would maybe make more sense if we were operating in a vacuum, but they've already provided affidavits so I think -- and obviously I would present *Jencks* material to the extent I can acquire it in the normal course.

THE COURT:  Is there anything that would be *Jencks* material other than what's been submitted by your --

MR. MORAN:  I don't believe so, but it would be my obligation to inquire.

THE COURT:  Oh, yes.

MR. MORAN:  I don't believe so, but I haven't done that yet, so I don't know that.

1　　　　　THE COURT:  So inquire of Attorney Walshe, if I have

2　　it right.

3　　　　　MR. MORAN:  Wallace.

4　　　　　THE COURT:  Excuse me.  Wallace.  I'm in the W's in

5　　the telephone book right now, and I'm missing the distinctions.

6　　Inquire of Attorney Wallace if there are any other percipient

7　　witnesses with respect to this that would be offered in this

8　　matter, but I want to make a resolution, a factual resolution

9　　here.  And that factual resolution is critically important to

10　　the sentence that I impose.

11　　　　　MR. MORAN:  Yes, Your Honor.

12　　　　　MS. MINER:  Your Honor, we would obviously like the

13　　ability to depose witnesses.

14　　　　　THE COURT:  You may.  The question for me is whether

15　　or not I extend things even further.

16　　　　　MS. MINER:  Thank you.

17　　　　　(Counsel discussion off the record.)

18　　　　　MR. MORAN:  Your Honor, thank you very much for the

19　　chance to inquire.  I think that was very helpful.

20　　　　　What Attorney Wallace explains to me is that there

21　　actually were two actions.  There was an equity action first.

22　　Mr. Brian Walshe appeared personally in that action.  Never

23　　actually appeared personally in what I'll call the will action.

24　　Both were pending in Plymouth Probate and Family court.

25　　　　　So I think my witnesses would be -- in the equity

action, there were actually some live evidentiary hearings, so obviously I'll have to get the transcripts of those, but it's another reason perhaps we don't need depositions.  It seems like we are working off some already-tilled ground.

So my witnesses I believe will be Andrew Walshe, who just had a baby, but Attorney Wallace thinks by August he should be okay -- he does not live in Massachusetts, Jeffrey Ornstein who was the close friend of Mr. Thomas Walshe, Dr. Fred Pescatero, he initiated the equity action.  He's also represented by counsel.  And then the constable whose affidavit was in my submission.  So I think that would be four witnesses at the same time.

I would hope to make them -- thinking about how much time it would take, someone like the constable I don't think would be very long, so I'm hopeful that we could move expeditiously through this.  That would be my goal.

THE COURT:  All right.  Well, Ms. Miner, what would you have by way of witnesses?

MS. MINER:  Your Honor, I don't know.  I mean, the two people --

THE COURT:  I understand that.  On the other hand, I want to know --

MS. MINER:  Certainly.

THE COURT:  -- at a certain point.  So what I would like is for the parties to tell me, let's say by next Tuesday,

who the witnesses are and their availability, make more
specific inquiries.  If we have to take them one by one at
different times, I'll do that in this case.  If there's a
transcript, I've never seen it.

MR. MORAN:  I have not either.

THE COURT:  I'm not sure that there's a transcript
that's yet been prepared.  Maybe Attorney Wallace knows whether
there is.

MR. WALLACE:  Your Honor, they're not prepared, but
they're available.  I can request them at any time.

THE COURT:  How long does it take ordinarily?

MR. WALLACE:  A week, then I would have to have it
transcribed, so another two weeks to have it transcribed.  You
can get the actual hearing itself.

THE COURT:  Right, but I'd want a transcript for a
record in this case, but it's the -- as it's done now in the
probate court, and like the lawyers here, it's been a long time
since I've been in the probate court, but they give you a tape,
and then you're required -- not required but you get your own
court reporter to do the transcription for you rather than
them, that is, the court providing a transcription?

MR. WALLACE:  The court only provides a verbal.  They
don't provide a written transcription, so that has to be
transcribed by a court stenographer, and we have to pay those
costs.

1          MR. MORAN:  I can have the government order it, Your

2     Honor.

3          THE COURT:  Right, because I consider that to be the

4     government's responsibility.  But I would like both of those.

5     We'll have both versions of it.  But for our purposes, for

6     trial purposes and for *Jencks* purposes, I want to have a

7     transcription.

8          MR. MORAN:  Yes, Your Honor.  It actually occurs to

9     me, it may be that we might, in terms of expenditure of

10    resources, we might avoid or at least avoid a hearing or at

11    least narrow the issues based on what's already been adduced at

12    the probate court, which was sworn and subject to

13    cross-examination.

14         THE COURT:  Right.

15         MR. MORAN:  So it may be that it gets us --

16         THE COURT:  But the two of you are going to have to

17    agree on -- not necessarily agree.  I always welcome

18    opportunities to explore the law of collateral estoppel and res

19    judicata generally.  And the defendant was a party in the case,

20    and presumably it can be adduced against him there as an

21    admission or whatever, but that he had a full opportunity to

22    dispute the matter.  And presumably there's some sort of final

23    order here that it could depend on, and it's either appealable

24    or not.  But I don't really want to get into all of that unless

25    it's necessary.  It may be.  But you're going -- the two of you

1  are going to have to talk this through.

2          MS. MINER:  Your Honor, if I may.

3          THE COURT:  Yes.

4          MS. MINER:  I think one thing we agree on from a brief

5  conversation is that we need the transcript first before we can

6  decide anything.

7          THE COURT:  Yes, that's fine.  But we're going to do

8  this in an orderly fashion, and I'm going to be provided with

9  the information I think is necessary, and meanwhile of course

10 the defendant is going to be filing his two financial

11 statements with the Probation Office.

12         MS. MINER:  Yes, Your Honor.  When I was raising the

13 issue of the transcript, Your Honor wanted us both to say what

14 witnesses we want by next Tuesday --

15         THE COURT:  You tell me when you --

16         MS. MINER:  If we could have a week after we get the

17 transcript.

18         THE COURT:  Okay.

19         MR. MORAN:  Yes.  So I think the first step, Your

20 Honor, is for me, and I will endeavor to do this today, perhaps

21 Attorney Wallace will help us, is order the transcripts.

22         THE COURT:  Here is what I want -- not "here is what I

23 want," but here is what would move it along.  Just tell me next

24 week what you think the likely timeline is for being able to

25 say, "Here is what we want to do with witnesses," and then

1  we'll try to fill it in.

2  But I raised my eyebrows at eight weeks.  Now I'm not

3  raising my eyebrows at eight weeks.  This may take time for

4  preparation, but in any event --

5  MR. MORAN:  Understood, Your Honor.  I think we are in

6  agreement about the first couple of steps, and Ms. Miner and I

7  have had a good relationship on this case.  We, as always, will

8  work to see if we can at least narrow issues.

9  THE COURT:  I understand that.  I understand the

10  respective responsibilities to represent your clients,

11  respective clients in this case.  On the other hand, I have to

12  sign a judgment.  And I'm not signing a judgment until I'm

13  satisfied that I know all that I need to know to enter that

14  judgment.

15  This has brought home what we all really know, is that

16  there is rarely a careful analysis of the financial statements

17  that people submit, just isn't looked at.  That doesn't mean

18  there shouldn't be.  It just means that there are resources

19  allocation problems that everybody has.  I do, too.  But

20  ultimately, my resource allocation problems are I'll do

21  whatever I have to do to get this right.

22  MR. MORAN:  I agree, Your Honor.  I'll say in 15

23  years, this is the first time I've ever had access, I've ever

24  seen the underlying data.

25  THE COURT:  Right.  And for good and sufficient

1  reasons, probation files are not turned over to the parties.

2  Probation has its own protocols and so on.  And that's the

3  reason that I'm maintaining under seal Exhibit 11, I believe,

4  of your supplemental memorandum, because that's a Probation

5  Office document arising in the context of the Presentence

6  Report.  And I will, to the degree that I can, preserve the

7  integrity of that, making sure that the parties anyway have a

8  chance to know what it is that I'm being exposed to.

9         So I guess the way I'm leaving it is I will make sure

10  that the orders of forfeiture have been signed and are entered

11  and they're liquidated and provide a figure.  I have a figure

12  with respect to restitution that the parties have agreed on.

13  It seems reasonable, but I wanted to be sure that I had Victim

14  2 reduced to a monetizeable figure, particularly in light of

15  the inability to recover on that.

16         I haven't finally decided restitution, but that seems

17  like the figure that we're going to be dealing with.  And of

18  course we have the special assessment.  The government has

19  recommended no fine.  I don't know what I think about that yet

20  at this point.  Maybe that's part of the plea agreement in any

21  event.

22         MR. MORAN:  That was because we had in mind the

23  restitution and money adjustment as being --

24         THE COURT:  Right.

25         MR. MORAN:  -- important.

1    THE COURT:  The concern always in financial matters is

2  that what you have is an efficient breach.  Someone manages to

3  extract monies that don't belong to them.  That's what

4  restitution is for.  And then if they get caught, they provide

5  the restitution, but they don't face criminal sanction in the

6  form of fine.

7    There are reasons for that.  Sometimes restitution is

8  beyond the capability of a defendant and those who support him

9  to provide.  This doesn't appear to me to be that case.  So I

10  leave open the question of fine until the parties are clear

11  about that.

12    MR. MORAN:  Your Honor, I have one further request and

13  a question.

14    MS. MINER:  Me, too.

15    MR. MORAN:  On page 7 of my memorandum, I did ask that

16  Your Honor add a condition of the -- he would remain under

17  presentencing release, I presume.

18    THE COURT:  Yes.

19    MR. MORAN:  I would ask that Your Honor might impose a

20  condition, the wording is on page 7 of my memorandum, that he

21  provide the inventory and accounting, which are two separate

22  documents, to the probate and family court.

23    MS. MINER:  Your Honor, I thought that's what we were

24  doing here?

25    THE COURT:  Pardon me?

1    MS. MINER:  I thought that's what we were doing here.

2    THE COURT:  I think, here is my view, that should be

3    provided, but to me.  If the probate and family court hasn't

4    bothered to get it, then they can do whatever they want on

5    that.  But this is a proceeding for the sentencing of this

6    defendant to take into consideration potential violations of

7    pretrial conditions and to also address the question clear in

8    my mind of the degree of culpability.

9    Now, the defendant may say, "I've got a Fifth

10   Amendment right on that."

11   MR. MORAN:  Yes, Your Honor is correct.  At the same

12   time, he's under an obligation to a separate, a court of a

13   separate sovereign.  I think Your Honor could order him to obey

14   the obligations he owes to that sovereign regardless of whether

15   the --

16   THE COURT:  Has that court entered an order that he

17   has to complete and sign the inventory?

18   MR. MORAN:  Yes.

19   THE COURT:  And what actions has the court taken to

20   implement that?

21   MR. MORAN:  The court did permit Attorney Wallace to

22   make service by alternate means.

23   THE COURT:  Right.  So they've got service, presumably

24   they believe that service has been made in that case.  And has

25   some order been entered by the court to deal with that?

1          MR. MORAN:  The order permitting service by alternate

2    means was July 14, 2021.

3          THE COURT:  And that opens it up.  But there generally

4    is a specific order.  And on something like this, there is an

5    opportunity for the party to respond to the specific order.  In

6    any event, I'm not aware of any order that he has not complied

7    with in the state court that I should be implementing.  I am of

8    the view that I should have all of this material but in this

9    case.

10         MR. MORAN:  Separate from --

11         MS. MINER:  Your Honor, I can make this easy.  We'll

12   give it to the probate court at the same time we give it to

13   you.

14         THE COURT:  Fine, that's fine with me.  So I will

15   receive as an additional condition a complete, signed, dated

16   inventory of the estate of Thomas Morecroft Walshe as the

17   defendant is aware of it and that he will render an account

18   with that respect as called for by, too, for me.  And I take

19   the representation that he's going to be doing that in the

20   state court as well, which of course he should, should have.

21         MR. MORAN:  My question, Your Honor, is, if it would

22   be possible, I've spoken to counsel for at least one of the

23   victims who was interested in having the money released as soon

24   as possible.  I don't know if -- it sounds like there will be a

25   certain amount of money that's been credited to the District

1  Court.  I don't know if that money can be the process to --

2       THE COURT:  Well, we'll see.  I mean, all of a sudden

3  the victims are quite interested in their money.  They're not

4  interested in participating in restorative justice issues.

5  They are not interested in appearing.

6       I understand, you know, victims have different views

7  about this.  On the other hand, I'm not a collection agent.  My

8  principal responsibility is to ensure that the degree of

9  culpability that the defendant has is reflected properly in a

10  judgment in the court.  That includes restitution, of course.

11  But we're not here dealing with victims as a collection agency

12  at this point.  So maybe that can be paid out but not out of

13  this court's registry at this time.

14       MR. MORAN:  I do want to add, Your Honor, to suggest

15  the victims have not been interested would be wrong.  They are

16  very interested.

17       THE COURT:  They are interested in certain aspects of

18  the whole process of why it is that victims are provided with

19  their opportunity to be heard.  And we try as best we can to

20  honor the victims' choices, and I do.  They don't want to

21  appear, they don't want to engage in questions of restorative

22  justice, that's their choice.  And there are reasons why

23  someone would be embarrassed to be a victim under these

24  circumstances.

25       MR. MORAN:  There is also issues, at the same time,

1    Your Honor, that one victim lives in Korea and one victim lives

2    in France and one victim lives in California, and it's a

3    pandemic.

4         THE COURT:  All of that is true, but that doesn't mean

5    they're on the installment plan for payment of restitution.

6         MR. MORAN:  No.  You're absolutely correct, Your

7    Honor.  That's why I phrased it as a question and not a

8    request.  I did feel like one of my obligations as counsel for

9    the government is to --

10        THE COURT:  You discharged your obligation, and the

11   answer to your question is another question:  When are we going

12   to get this resolved finally?  And that's what I'm moving

13   toward here as promptly as I can in fairness to the parties

14   with an opportunity for the parties, including the defendant,

15   to think about what is actually available for purposes of

16   restitution and whether or not that restitution can be paid

17   before we reach these issues.

18        That doesn't mean that I'm not going to be dealing

19   with questions of whether or not there was money

20   misappropriated in connection with the estate, but it does

21   affect the question of recognition of his responsibilities,

22   timely or not.  But I leave that open.

23        I'm simply saying here is the structure that we're

24   going to have for this, and it doesn't include, as I said,

25   colloquially but I think accurately, installment payment of

1    restitution at the instance of victims who I understand have

2    limitations of various kinds, including ones having to do with

3    travel and that sort of thing but other concerns that have been

4    expressed in the papers here.

5              MR. MORAN:  Thank you, Your Honor.  That was it.

6              MS. MINER:  Your Honor, I have two questions for you.

7              THE COURT:  Right.

8              MS. MINER:  One, with respect to the treasury check,

9    with respect to the treasury check, I presume that that has

10   been cashed and it goes towards restitution.

11             THE COURT:  It's been held, I think.  Ms. Beatty, do

12   you know the answer to that, what's transpired with that?

13             (Court and deputy clerk confer.)

14             THE COURT:  We'll double-check to see what the story

15   is.

16             MS. MINER:  We just hope that those funds, which

17   everybody now admits are available, goes towards restitution.

18             THE COURT:  I think that's right.

19             MS. MINER:  Thank you.  The second question, Your

20   Honor, the last time you were here you prohibited me or any

21   representative of Mr. Walshe from contacting the Hingham Bank.

22   I presume now I can contact the Hingham Bank.

23             THE COURT:  The bank?

24             MS. MINER:  The Hingham Savings Bank.

25             THE COURT:  Yes, you may.  Now we're on to questions

of developing evidence in the case, and I don't think there's a

problem with that at this point.  We've now got a broad outline

of what the issues are.

MS. MINER:  Thank you.  I just wanted to be clear.

THE COURT:  Okay.  All right.  So I'll look forward to

a preliminary idea of what the scheduling is going to be in

this case, and we'll get to it as promptly as we can after

consideration of the due process rights that all of us have an

obligation to adhere to.  All right.  We will be in recess.

(Adjourned, 11:52 a.m.)

1                      CERTIFICATE OF OFFICIAL REPORTER

2

3               I, Kelly Mortellite, Registered Merit Reporter

4  and Certified Realtime Reporter, in and for the United States

5  District Court for the District of Massachusetts, do hereby

6  certify that the foregoing transcript is a true and correct

7  transcript of the stenographically reported proceedings held in

8  the above-entitled matter to the best of my skill and ability.

9               Dated this 17th day of June, 2022.

10

11               /s/ Kelly Mortellite

12               _____

13               Kelly Mortellite, RMR, CRR

14               Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25